UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-06502-SVW-SSC | Date | October 19, 2026 |
| Title | *Jamal Foster v. Sysco Los Angeles, Inc. et al* | | |

**JS-6**

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
| Daniel Tamayo | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [17] AND DENYING PLAINTIFF'S MOTION TO STRIKE [22]

## I. Introduction

Before the Court is a motion to remand and motion to strike Defendant Sysco's ("Sysco") affirmative defenses filed by Plaintiff Jamal Foster. *See* Plaintiff's Motion to Remand ("Mot."), ECF No. 17; Plaintiff's Motion to Strike ("Mot. to Strike"), ECF No. 22. For the reasons stated below, the motion to remand is GRANTED. Accordingly, Plaintiff's motion to strike is DENIED as moot.

## II. Relevant Background[1]

Plaintiff began working for Sysco as a Sanitation Technician starting on January 31, 2022. Complaint ("Compl."), ECF No. 1-2, ¶ 10. From the start of Plaintiff's employment, Sysco and his supervisor, Defendant Emmanuel Duran ("Duran"), subjected him to racially motivated harassment and discrimination. *Id.* ¶¶ 12-13. Among other things, Defendants used hostile and demeaning language,

[1]The following allegations from Plaintiff's Complaint are accepted as true for the purposes of this motion to dismiss. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

:

Initials of Preparer DTA

denied Plaintiff standard workplace privileges and opportunities, falsely accused Plaintiff of poor work performance and use of illegal substances, and forced Plaintiff to partake in humiliating drug testing procedures. *Id.* ¶¶ 13-32. On July 17, 2023, Plaintiff filed a formal complaint to Human Resources regarding these issues but never received confirmation that Defendant initiated or completed an investigation. *Id.* ¶¶ 33-34.

On July 17, 2023, Plaintiff's doctor placed him on medical leave due to his stress and anxiety. *Id.* ¶ 35. On October 19, 2023, Plaintiff was released by his doctor to return to work with a work restriction of working no more than four hours per day. *Id.* ¶ 36. Defendants, however, denied Plaintiff's request for accommodations and disallowed him from returning to work until March 2024. *Id.* ¶¶ 36-39.

Defendants eventually allowed Plaintiff to return to work on March 28, 2024, and granted his work restrictions. *Id.* ¶ 38. Soon after Plaintiff's return to work, Defendants informed him that he had accumulated "attendance points" that could subject him to discipline and began giving Plaintiff written backdated warnings over alleged unexcused absences. *Id.* ¶¶ 44-47. Defendants also continued excluding Plaintiff from workplace privileges and opportunities, including, for example, by denying Plaintiff's request to leave work early to go vote on Election Day while allowing other employees to leave work two hours early to vote. *Id.* ¶¶ 49-53. On November 7, 2024, Plaintiff filed another formal complaint to Human Resources to report this conduct, alleging that he was facing retaliation over his past complaints. *Id.* ¶ 54. Although Defendants acknowledged this complaint, Defendants did not provide Plaintiff with a meaningful explanation, remedy, or protection against retaliation. *Id.* ¶ 55.

On December 10, 2024, Plaintiff filed another complaint to Human Resources regarding being retaliated against. *Id.* ¶ 57. Approximately 30 minutes later, Defendants suspended Plaintiff pending termination. *Id.* On December 13, 2024, Defendants terminated Plaintiff's employment. *Id.* ¶ 59. Plaintiff alleges that because of Defendant's conduct, he suffered lost wages, lost benefits, emotional distress, anxiety, humiliation, reputational harm, medical expenses, and other damages. *Id.* ¶ 61.

:

Initials of Preparer DTA

**JS-6**

On May 14, 2026, Plaintiff sued Defendants in California state court. *See generally id.* On June 15, 2026, Sysco removed the case to this Court, asserting that Plaintiff's claims, though based on state law, posed federal questions because they are preempted by the federal Labor Management Relations Act ("LMRA"). *See generally* Notice of Removal ("Not."), ECF No. 1. Plaintiff subsequently filed a motion to remand the case back to state court, arguing that the complaint contains no federal causes of action. Mot. at 7, 13. Plaintiff also filed a motion to strike Sysco's affirmative defenses. *See generally* Mot. to Strike.

## III. Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state to federal court if the federal court has original jurisdiction. Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether there is federal-question jurisdiction is governed by the "well-pleaded complaint rule," which allows for federal jurisdiction only when a federal question is presented on "the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

However, a corollary to the well-pleaded complaint rule is the "complete preemption" doctrine, which provides that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). The pre-emptive force of a federal statute can be so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65. Thus, even though federal jurisdiction is ordinarily determined by looking only to the plaintiff's well-pleaded complaint, the state-law nature of a completely preempted claim is "displace[d]" and the claim is considered "purely a creature of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*., 463 U.S. 1, 23-24 (1983).

While very few federal statutes meet these stringent criteria, one of them is the statute at issue here, Section 301 of the Labor Management Relations Act. *City of Oakland v. BP PLC*, 969 F.3d 895,

905-06 (9th Cir. 2020). Indeed, "[b]y enacting the LMRA, Congress completely preempted state law for certain labor-related claims." *McCray v. Marriot Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018). "In these areas, 'the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.* (quotations omitted). "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

"Critically, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted under § 301." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (internal quotation marks omitted). "[T]he Supreme Court has stressed that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152. "For this reason, setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states, and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA." *Id.* (internal quotations omitted).

In the Ninth Circuit, to determine whether an employment dispute is preempted by Section 301, courts apply a two-step inquiry called the *Burnside* test. First, if the "asserted cause of action involves a right that exists solely as a result of the CBA," then "the claim is preempted, and the analysis ends there." *Id.* (cleaned up). Second, even if the right exists independently of the CBA, if "plaintiff's state law right is substantially dependent on analysis" of the CBA, then the claim is also preempted. *Id.* at 1153. "[If] not, then the claim can proceed under state law." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60.

Under the second prong, "claims are only preempted to the extent that there is an active dispute over the meaning of contract terms" in the CBA. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (internal quotations omitted). "A hypothetical connection between the claim and the terms of

:

Initials of Preparer DTA

the CBA is not enough to preempt the claim. Nor is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language." *Id.* at 921-22 (emphasis in original). For example, looking to a CBA "to discern that none of its terms are reasonably in dispute; to identify bargained-for wage rates in computing a penalty; or to determine whether the CBA contains a clear and unmistakable waiver of state law rights" is not enough to warrant preemption. *Id.* In other words, the "need for a purely factual inquiry . . . that does not turn on the meaning of any provision of a collective-bargaining agreement, . . . is not cause for preemption under Section 301." *Burnside*, 491 F.3d at 1059 (internal quotation marks omitted).

## IV. Discussion

### A. LMRA Preemption

In the instant action, Plaintiff asserted sixteen state-law causes of action, including violations of the Fair Employment and Housing Act ("FEHA") on the basis of race discrimination, hostile work environment, retaliation, failure to prevent discrimination, harassment, and retaliation, disability discrimination, failure to engage in the interactive process, disability based harassment, and unlawful medical inquiry and improper drug testing;[2] violations of the California Family Rights Act ("CFRA") on the basis of interference and retaliation; violations of the Labor Code on the basis of denial of paid voting leave and retaliation; a violation of California Business & Professions Code on the basis of unfair competition ("UCL"); intentional infliction of emotional distress ("IIED"); and wrongful termination in violation of public policy. *See generally* Compl. The Court below applies the *Burnside* test to these claims.

#### 1. *Burnside* Step 1

The Court concludes that all of Plaintiff's claims survive the first step of the *Burnside* test. Nowhere in the complaint does Plaintiff relate any of his causes of action to the CBA or assert that his rights "exist solely as a result of the CBA." *Burnside*, 491 F.3d at 1059; *see Stearns v. Davis Wire Corp.*,

[2] Plaintiff's unlawful medical inquiry and improper drug testing claim is also based on a violation of Article I, Section 1 of the California Constitution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-06502-SVW-SSC | Date | October 19, 2026 |
| Title | *Jamal Foster v. Sysco Los Angeles, Inc. et al* | | |

**JS-6**

No. 2:16-cv-02401-CAS(MRWx), 2016 WL 3008167, at *5 (C.D. Cal. May 23, 2016) ("In the operative complaint, plaintiff does not claim that he was not granted the terms and conditions of employment promised under the CBA; rather, plaintiff asserts a series of claims that arise under California law and that exist independent of the particular terms of the CBA"). Rather, every cause of action in the complaint arises solely out of state law claims. Furthermore, Sysco does not argue anywhere in its notice of removal or opposition that Plaintiff's claims arise solely out of the CBA. *See Irving v. Okonite Co., Inc.*, 120 F.Supp.3d 1020, 1025 (C.D. Cal. 2015) ("Here, all of Plaintiff's causes of action are creations of California statutes . . . Defendants do not argue that the CBA creates the rights upon which Plaintiff is bringing his suit."). Accordingly, the Court proceeds to step 2 of the *Burnside* test.

**2. *Burnside* Step 2**

Sysco argues that Plaintiff's claims are preempted under step 2 of the *Burnside* test because the claims require interpreting the CBA. Opp'n at 9. For the reasons stated below, the Court disagrees.

**a. Wrongful Termination in Violation of Public Policy (Count 16)**

The Court first concludes that Plaintiff's wrongful termination in violation of public policy claim is not substantially dependent on analysis of the CBA and therefore not preempted.

The Ninth Circuit has held that a wrongful discharge in violation of public policy claim is preempted "if it is not based on any genuine state public policy . . . or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1002 (9th Cir. 1987). It is California public policy "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment." Cal. Gov't Code § 12920; *see also Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir. 1989) ("There is little doubt that California has adopted a public policy against discrimination in the workplace").

:

Initials of Preparer DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-06502-SVW-SSC | Date | October 19, 2026 |
| Title | *Jamal Foster v. Sysco Los Angeles, Inc. et al* | | |

**JS-6**

Here, Plaintiff's wrongful termination in violation of public policy claim is based on race discrimination and retaliation. Specifically, Plaintiff alleges that he engaged in various activities protected by California public policy such as reporting discrimination and unlawful workplace conduct, and requesting reasonable accommodations and medical leave, only to be met with escalating retaliation, hostility, exclusion, suspension, and ultimately termination. Compl. ¶¶ 342-46. Plaintiff's wrongful termination in violation of public policy claim is therefore clearly based on genuine state public policy. *See Stearns,* 2016 WL 3008167, at *7 (finding that plaintiff's wrongful discharge claim was based on genuine state public policy because plaintiff alleged that he was terminated because of his race and in retaliation for complaints he made about discrimination and workplace safety).

Sysco nevertheless argues that resolving Plaintiff's wrongful termination in violation of public policy claim requires interpreting the CBA—the progressive disciplinary framework and just cause standard articulated in the CBA—because Plaintiff claims he was terminated for "pretextual reasons." Opp'n at 9-10. Sysco specifically calls the compliance with the CBA's provisions a "defense" to Plaintiff's wrongful termination claim. *Id.* at 10.

Sysco's argument fails because Plaintiff's wrongful termination claim is "plainly based on state law" and "§ 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways Inc*., 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001); *see also Mayo v. Aspire Bakeries, LLC*., 2:26-cv-05885-DSF-RAO, 2026 WL 1957836, at *5 (C.D. Cal. July 6, 2026) (finding no preemption even when plaintiff alleged that the accumulation of attendance "occurrences" was pretext for plaintiff's unlawful termination because whether the "occurrences" were correctly calculated is relevant only to defendant's defense that it properly terminated plaintiff according to the CBA's terms). Furthermore, Plaintiff's claim focuses on Sysco's motivation for terminating him rather than the terms in the CBA. Compl ¶ 347; *see Brown*, F.App'x at 575 (holding that plaintiff's wrongful termination claim based on age discrimination did not require interpretation of the CBA because it focused on defendant's motivations for terminating plaintiff); *Morgan v. Disney Ent., LLC*, No. CV 24-6655 PA (JCx), 2024 WL 3757164, at *3 (holding that Plaintiff's claim for termination in violation of

:

Initials of Preparer DTA

public policy did not require CBA interpretation because the claims focused on defendants' motivations for ending plaintiff's employment).

Therefore, Plaintiff's wrongful termination in violation of public policy claim is not preempted under Section 301.

**b. FEHA and Related Retaliation Claims (Counts 1-7, 9, 12-13)**

The Court concludes that Plaintiff's FEHA claims, retaliation claims arising from the CFRA, and whistleblower retaliation claims under Labor Code Sections 1102.5 and 6310, are not "substantially dependent" on analysis of the CBA and therefore not preempted.

The Ninth Circuit has consistently held that FEHA claims are not preempted by the LMRA. *See, e.g.*, *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517-18 (9th Cir. 1988) (FEHA disability discrimination claim not preempted); *Detabali*, 482 F.3d at 1203 (FEHA race and national origin discrimination and retaliation claims not preempted); *see also Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 574–75 (9th Cir. 2014) ("We have consistently held that the LMRA does not preempt FEHA claims."). This is because the rights conferred by FEHA are "defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989).

For similar reasons, courts within the Ninth Circuit have held that retaliation claims under other California statutes do not require CBA interpretation. *See Brown*, 571 F.App'x at 575 (holding that a Labor Code § 1102.5 claim requires "an inquiry into the respective actions of the employer and employee in order to determine whether" the employer retaliated against Brown after he engaged in whistleblowing activity, not on interpretation of the CBA); *Hernandez v. Pac. Underground Constr., Inc.*, 794 F. Supp. 3d 696, 708 (C.D. Cal. 2025) (holding that none of plaintiff's claims, including CFRA retaliation, were preempted); *Campos v. Green Res. Diamond Co.*, 785 F. Supp. 3d 589, 599-600 (N.D. Cal. 2025) (holding that whistleblower retaliation claims are not preempted under the LMRA because the claims requires an inquiry into the actions of plaintiff's employer, not an interpretation of the CBA terms).

:

Initials of Preparer DTA

Here, Plaintiff's FEHA claims turn on whether Sysco subjected Plaintiff to discrimination and a hostile work environment, ignored his complaints, and retaliated against him for his complaints and requests for accommodations. Compl. ¶¶ 62-193. Purely factual questions pertaining to employee and employer conduct and motivation do not require CBA interpretation. *See Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (holding an Illinois retaliatory discharge claim was not preempted by Section 301 because proving the claim required analysis of purely factual questions pertaining to the conduct of the employee and motivation of the employer, which do not require CBA interpretation); *see also Steib v. Sony Pictures Television Inc.*, No. 2:22-cv-07491-ODW (ASx), 2023 WL 3292865, at *4 (C.D. Cal. May 5, 2023) (holding the employee's FEHA claims were not preempted by § 301 because their analysis "will turn on whether he was subjected to race discrimination, whether Defendants ignored his complaints and failed to prevent it, and whether Steib was discriminated and retaliated against for reporting the discrimination and harassment"). Plaintiff's claims, therefore, arise under California law and are independent of the particular terms of the CBA.

Likewise, Plaintiff's CFRA and whistleblower retaliation claims merely ask whether Defendants responded to Plaintiff engaging in protected activities by subjecting Plaintiff to adverse employment actions. *Id.* ¶¶ 214-232, 269-309; *see also Shields v. Andeavor Logistics LP*, No. 2:19-cv-04995-JFW-SS, 2019 WL 3453202, at *4 (C.D. Cal. July 31, 2019) ("Plaintiff claims Defendants retaliated against and failed to re-hire her because she filed her Complaint of Discrimination with the DFEH . . . Thus, this claim requires an inquiry into Defendants' motivation for these actions, which does not require interpretation of the CBA."); *Campos*, 785 F. Supp. 3d at 599 ("Plaintiff asserts that Defendants retaliated against him for disclosing safety protocol violations, which Plaintiff reasonably believed were violations of federal and state law. . . . Plaintiff's whistleblower retaliation claim requires an inquiry into the actions of his employer. . . . This inquiry will not depend on interpretation of terms in the CBA"). None of these claims, therefore, require any interpretation of the CBA.

Sysco nevertheless argues that Plaintiff's FEHA and other retaliation claims require CBA interpretation. Opp'n at 10-11. First, as detailed above, none of the claims actually require interpretation of the CBA. *See Cramer*, 255 F.3d at 691 ("If the claim is plainly based on state law, § 301 preemption is

not mandated simply because the defendant refers to the CBA in mounting a defense"). Second, Sysco fails to show that there is an actual interpretive dispute over the meaning of the CBA terms referenced. Sysco merely catalogues the provisions without clearly explaining how any CBA provisions should be interpreted to resolve Plaintiff's claims. *See Mayo*, 2026 WL 1957836, at *5-6 (finding that defendant merely cataloguing CBA provisions without establishing how they are relevant or what interpretive dispute gives rise to LMRA preemption is not enough to preempt plaintiff's claims).

Therefore, Plaintiff's FEHA claims and related retaliation claims are not preempted under Section 301.

**c. CFRA Interference and Voting Leave Claims (Counts 8, 10)**

The Court concludes that Plaintiff's CFRA interference and Labor Code voting leave claims are not "substantially dependent" on analysis of the CBA and therefore not preempted.

The CFRA, in relevant part, prohibits employers from refusing an employee's request for family and medical leave or denying "a guarantee of employment in the same or a comparable position upon the termination of the leave." Cal. Gov. Code § 12945.2(a). Indeed, Plaintiff alleges that despite Plaintiff's request for leave and accommodations, Defendants failed to properly administer Plaintiff's protected leave, unjustly penalized Plaintiff for his protected or medically-related absences, and treated Plaintiff adversely because of his protected leave. Compl. ¶¶ 194-213.

Separately, the California Elections Code states "[i]f a voter does not have sufficient time outside of working hours to vote at a statewide election, the voter may, without loss of pay, take off enough working time that, when added to the voting time available outside of working hours, will enable the voter to vote." Cal. Elec. Code § 14000. Plaintiff alleges that Defendants denied Plaintiff's request to leave work early to vote, despite the fact that other employees were granted permission to leave early to vote. Compl. ¶¶ 233-48.

Both Plaintiff's CFRA interference and Labor Code voting leave claims arise out of state law rights whose analysis does not require CBA interpretation. Sysco argues that these claims are preempted because

they are governed by the attendance point system, FMLA leave, and the seniority framework provisions in the CBA. Opp'n at 10-12. Again, however, Sysco merely catalogues provisions of the CBA as relevant sections that govern Plaintiff's claims. Sysco fails to show that there is an interpretive dispute about the meaning of a CBA term.

Furthermore, even if Plaintiff's voting leave claim might be regulated by the CBA's seniority framework, "just because a CBA provides a remedy or duty related to a situation that is also directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA." *Humble v. Boeing Co.*, 305 F.3d 1004, 1009 (9th Cir. 2002).

Therefore, Plaintiff's CFRA interference and voting leave claims are not preempted under Section 301.

**d. Unlawful Medical Inquiry/Drug Testing and Privacy Claim (Count 11)**

The Court concludes that Plaintiff's unlawful medical inquiry/drug testing and privacy claim, in violation of FEHA and Article I, Section 1 of the California Constitution, is not "substantially dependent" on analysis of the CBA and therefore not preempted.

In *Schrader v. Noll Mfg. Co.*, 91 F.App'x 553, 554 (9th Cir. 2004), the plaintiff, who was a union truck driver, alleged that his employer invoked the drug testing provisions of plaintiff's CBA as a pretext for discriminating against him on the basis of his age and disability, and in retaliation for his filing a workers' compensation claim. The Ninth Circuit held that the plaintiff's drug testing claim, which was brought under FEHA, was not preempted because the plaintiff was only challenging his employer's motives for invoking the drug test. *Id.* at 555. The drug testing claim therefore did not require CBA interpretation as it did not "inhere" in the nature of the plaintiff's claim. *Id.*

Here, Plaintiff alleges that Defendants forced him to submit to drug testing despite Plaintiff not having used drugs or having been involved in any workplace accidents, injuries, or occurrences that would have justified suspicion-based drug testing. Compl. ¶¶ 253-262. Plaintiff's claim stems from Defendants'

alleged discriminatory and retaliatory motives for imposing drug testing, which does not require CBA interpretation. *See also Morris v. Pac.*, No. 2:20-cv-01291 WBS, 2020 WL 6526248, at *6 (E.D. Cal. Nov. 5, 2020) (holding that plaintiff's improper drug test was not preempted because plaintiff alleged that "specific drug tests he was required to take were pretexts used by defendant to retaliate against him for complaining about discrimination and harassment").

Sysco argues that Plaintiff's claim requires interpretation of Article 26 of the CBA, which governs physical and mental examinations and gives union representatives the right to review the fairness and accuracy of such examinations. Opp'n at 11. However, once again, Sysco has failed to point the Court to terms within the CBA that actually require interpretation. "[E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." *Lingle*, 486 U.S. at 409-10.

Therefore, Plaintiff's unlawful medical inquiry/drug testing and privacy claim is not preempted under Section 301.

**e. UCL and IIED Claims (Counts 14, 15)**

The Court concludes that Plaintiff's UCL and IIED claims are not "substantially dependent" on analysis of the CBA and therefore not preempted.

Sysco merely argues that Plaintiff's UCL and IIED claims are derivative of the predicate claims, which according to Sysco all require CBA interpretation. Opp'n at 12-13. Because Sysco has failed to show that any of Plaintiff's other claims require CBA interpretation, the UCL and IIED claims are not derivative of those claims. *See Mayo*, 2026 WL 1957836, at *6 ("Because Aspire has not established that any of Mayo's claims are preempted by the LMRA, his unfair competition claim is also not preempted.").

The Court independently concludes that Plaintiff's IIED claim is not preempted because an IIED claim "may not be preempted if it has been tacked on to the violation of a separate specific non-negotiable

state statute, the violation of which always rises to the level of outrageousness." *Humble*, 305 F.3d at 1013-14; *see also Cramer*, 255 F.3d at 697 (finding IIED claim not preempted because the claim was premised on defendant's "use of hidden cameras and two-way mirrors in restrooms to conduct clandestine surveillance"); *Pergini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991) ("to the extent that [plaintiff's] claims are based on allegations that [defendant's] conduct and remarks constituted on-the-job harassment, reference to the CBA is not required to determine whether [defendant's] conduct exceeded all bounds usually tolerated in a civilized community. The CBA does not govern the offending behavior."); *Campos*, 785 F.Supp.3d at 601 (finding plaintiff's IIED claim not preempted because claim was based on allegations of unlawful discrimination and retaliation). Here, Plaintiff bases his IIED claim on the various conduct he was subjected to, including racial discrimination and harassment, retaliation, exclusion from workplace privileges and opportunities, denial of accommodations and protected leave rights, and ultimately termination. Compl. ¶¶ 326-33. Plaintiff's IIED claim is thus derivative of the various violations of separate state statutes and is thus not preempted.

Therefore, Plaintiff's UCL and IIED claims are not preempted under Section 301.

### B. Plaintiff's Request for Fees and Costs

The Court denies plaintiff's request for attorneys' fees and costs incurred as a result of removal. "An order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under Section 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Here, Sysco, although ultimately unsuccessful, had an objectively reasonable basis for removal. *See also Mayo*, 2026 WL 1957836, at *6; *Irving*, 120 F. Supp. 3d at 1027. Plaintiff's request for fees and costs is therefore DENIED.

## V. Conclusion

:

Initials of Preparer DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-06502-SVW-SSC | Date | October 19, 2026 |
| Title | *Jamal Foster v. Sysco Los Angeles, Inc. et al* | | |

**JS-6**

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. Accordingly, Plaintiff's motion to strike is DENIED as moot. Plaintiff's request for fees and costs is also DENIED.

**IT IS SO ORDERED.**

:

Initials of Preparer DTA